ROBERTSON *vs.* M'NIEL.

Where there is a controversy between owners of adjoining farms as to the division line between them, and they submit such controversy to arbitrators, authorizing them to establish the line, without any limitation to their powers other than that their decision shall be governed by *an original tier line,* or a line between two tiers of lots, and the arbitrators make an award declaring a certain line, specially set forth in the award, as the division line between the parties, such submission and award is conclusive; and he who, according to such line established by the arbitrators, has in his possession lands belonging to his neighbor, may be compelled to surrender the same by action of *ejectment.*

It is competent for the *arbitrators* to prove by *parol* that the line established by them is in conformity to the *original tier line* referred to in the submission; and it is not admissible, in an action of ejectment brought to recover the possession of lands under such an award, for the *defendant* to show that the line established by the arbitrators is not in conformity to the original tier line.

Where the submission is by *one* on the one side, and *two* on the other, one of the two cannot *revoke* the powers of the arbitrators without the assent of the other.

THIS was an action of *ejectment,* tried at the Washington circuit in November, 1831, before the Hon. ESEK COWEN, one of the circuit judges.

The plaintiff claimed to recover about two acres of land in possession of the defendant, under an *award* made by *arbitrators,* to whom the parties had submittted the settlement of the *line* dividing their farms; the plaintiff alleging that the division fences between their farms were not on the true line. Accordingly, on the 7th July, 1830, a *submission* was drawn up in these words: "We, the undersigned, severally agree, under the penalty of $500, to stand to and abide by the decision of I. Bishop, A. M'Keller, M. H. White, and D. R. M'Naughton, arbitrators in the matter of controversy between Archibald M'Niel, Daniel M'Niel and Archibald Robertson of Argyle, respecting a division line between lots Nos. 11 and 12, in Argyle, of the farm lots, the decision of which is to be *governed by the original tier line* from the south side of the town lots, at the north corner of Nos. 7 and 16 of the farm lots, to the line of Campbell's patent; and that the corner of said lots Nos.

11 and 12 be established accordingly by said arbitrators, and that they immediately proceed to the survey thereof." This instrument was signed by the *plaintiff*, Archibald Robertson, by the *defendant*, Archibald M'Niel, and by Daniel M'Niel, and was signed in the presence of Alexander Livingston and Roger Campbell. There was no seal attached to the signatures of the parties. Two days after the submission, the arbitrators made their *award* in these words : " We the undersigned, arbitrators, *do declare*, in a matter submitted to us by Archibald M'Niel, Daniel M'Niel, and Archibald Robertson, *the following to be our decision* respecting the division line between lots Nos. 11 and 12 of the lots in Argyle, between said parties, agreeable to a certain *bond of arbitration*, dated July 7th, 1830, and signed by Archibald M'Niel, Daniel M'Niel and Archibald Robertson, in the presence of Alexander Livingston and Roger Campbell, viz ; Beginning at a stake," &c· describing its location and giving the courses and distances to the north line of Campbell's patent, which award was signed by all the arbitrators. By the line thus established, it was found that the defendant, Archibald M'Niel, was in possession of 1 acre, 3 roods and 26 perches of land belonging to the plaintiff.

On the trial of the cause, the plaintiff read in evidence the submission. Its admission was objected to by the defendant, on the ground that by it the arbitrators were not aurhorized to establish *any division line* between the lots specified therein, *other than the true original tier line ;* and that the question, notwithstanding the submission, would be, where in fact was the true tier line ; and that the parol submission, therefore, was immaterial. The objection was overruled by the judge, who held that the *parol* submission was as binding as a *written* submission ; that the arbitrators were authorized by it to inquire where the true line was; and having settled that, to establish the line between lots Nos. 11 and 12 accordingly ; and that their award, both as to the *tier line* and the line between the parties, depending upon it, was as conclusive as would be a verdict between the parties. The plaintiff then read in evidence the *award :* to the admission of this document in evidence, the defendant also objected, on the grounds

that a submission authorizing such an award had not been shown, and that the award was void on its face for the want of certainty : this objection also was overruled. M. H. White, one of the arbitrators, then testified that he is a surveyor; that on the 9th of July, 1830, the arbitrators (the plaintiff and defendant both being present) run the line between lots Nos. 11 and 12; that they commenced at the south side of the town lots, at the north corner of Nos. 7 and 16 of the farm lots, and run according to the *original tier line, as they ascertained it to their satisfaction*, to the north line of Campbell's patent; that they had *no difficulty in satisfying themselves as to the true tier line*, and found all the possessions corresponding with it, until they arrived at the premises in dispute; *that they established the line thus run*, and set up a corner between lots Nos. 11 and 12 on the north line of Campbell's patent *both parties being present and neither party objecting* ; that the line thus established by the arbitrators between lots Nos. 11 and 12 was 92 links *west* of the division fences at the south end of the line, and 28 links west at the north end thereof, and that the quantity of land between the line thus established and the division fences was 1 acre, 3 roods and 26 perches, of which the *defendant* was in possession. The defendant insisted that the award gave no title to the premises claimed, and that it could not be set up as an estoppel against him. The judge ruled that the submission and award were conclusive, and entitled the plaintiff to recover. The defendant then offered to prove that the line adopted by the arbitrators was not the *true tier line ;* that when they met to ascertain the same, he offered to prove that the division fences between the parties were on such line, that the arbitrators refused to hear such testimony, and made their decision without hearing any evidence whatever : which proof thus offered was rejected by the judge. For the purpose of showing a *revocation* of the powers of arbitrators, the defendant offered to prove, that after the arbitrators had traced the line, but before they made their award, he declared to them that he would not be bound by their award. The judge ruled that such evidence would not prove a revocation, and therefore he rejected it. The jury, under the direction of the judge, found a

verdict for the plaintiff. The defendant, on a bill of excep-tions moved for a new trial.

ALBANY,
Oct. 1834.

Robertson
v.
McNiel.

*S. Stevens*, for the defendant.

*J. Willard*, for the plaintiff.

*By the Court*, SUTHERLAND, J. The defendant contends, 1. That by the terms of the submission, the arbitrators had au-thority merely to ascertain *where the original tier line* was, and not to establish a new line, that the award was therefore void as going beyond the submission ; 2. That the powers of the arbitrators were revoked before they made their award and that it was void on that ground ; and, 3. That if the a-ward is not void, it gives no title to land, and will not en-able the plaintiff to recover in ejectment.

As I understand the award, as explained by the testimony of White, one of the arbitrators, it does establish *the original tier line*, as found by the arbitrators, as the division line be-tween the parties. The obvious meaning and construction of his testimony is, that the corner set up by them between lots 11 and 12 was at the point where the tier line, according to their survey, struck those lots. This parol testimony in explanation of the award was not objected to, and it was clearly competent for the purpose of showing its actual loca-tion and operation. I do not understand the defendant to have objected to the award upon the trial, specifically upon the ground that it was not warranted by the submission in this respect. After the *submission* had been given in evidence and read, the counsel for the defendant objected to *it*, on the ground that it did not authorize or empower the arbitrators to establish any division line between the said lots other than *the true original tier line*; that the question, therefore, not-withstanding said submission, would be, where in fact *was the true tier line*; and this parol submission was therefore *immate-rial*: obviously contending that the decision of the arbitrators upon that question was not conclusive, but that the question was still open, and that they were at liberty to show that their fence stood upon the true tier line ; that the submission and

award therefore were immaterial. That the judge understood this to be the scope and bearing of the objection, is obvious from his decision upon it, which was, that the award was as decisive as a verdict between the parties. When the *award itself* was given in evidence, it was objected to by the defendant, on the ground that there was no *evidence of any submission* which authorised the arbitrators to make such award. This was before the testimony of White was given, explaining and locating the award; and, upon the face of the award itself there was nothing to show whether it established the *old tier line* or a new line as a division between the parties. It simply gave a place of beginning, and then certain courses and distances, as the means of ascertaining the corner established by them; but whether that corner was upon the old tier line or not, did not appear until the parol testimony was subsequently given. The objection, I have no doubt, was this : The award, in speaking of the submission, calls it a *certain bond of arbitration* : and the award was objected to, because no such *bond* was given in evidence. It is now one of the defendant's written points, " That the arbitrators had no authority to make such an award, because the submission, which they say in their award was their authority for making it, was not given in evidence. No *arbitration bond* was proved, or in any manner given in evidence. " The objection therefore to the award, that it was not in pursuance of the submission, is, I think, unfounded.

The powers of the arbitrators were not revoked. The submission, it will be recollected, was by the plaintiff, Robertson. on one side and by Archibald M'Niel the defendant, and Daniel M'Niel, on the other. Mr. Kyd says, where the submission is by one on one side, and two on the other, one of the two cannot revoke without the other, for the authority being jointly given, it must be jointly taken away. Kyd on Awards, 30. 2 Keb. 64, 79. The offer here was to prove that the defendant, Archibald M'Niel, declared to the arbitrators, after they had traced the line, but before they had made their award, that he would not be bound by their award. It may admit of question whether, if he had been the sole party, this loose declaration would amount to a revocation ; but whether

ALBANY,
Oct. 1834.

Robertson
v.
M'Niel.

it would or would not, it is enough that he alone could not revoke. Daniel M'Niel has an equal interest in the matter with himself; and having jointly conferred the power, one cannot recall it.

The submission and award in this case related merely to a question of *location* or *boundary*, and did not extend to the *title*. The title of the plaintiff to lot No. 12, and of the defendant to lot No. 11, was conceded. There never was any dispute upon that point. The only question between the parties was as to the division line between those lots, and that fact, they agreed, should be decided by arbitrators. It had no bearing whatever upon the abstract question of title, no more than the testimony of a witness showing the practical location of a deed, according to its courses and distances. It is well settled, that upon the strength of such an award, the party in whose favor it is made, may recover in an action of ejectment. The opposite party is held concluded by his own agreement from disputing the title of the plaintiff. This has been expressly decided in a number of cases. 3 East, 15. 2 Caines, 198. 4 Dall. 120. 15 Johns. R. 197. 497. 2 Cowen, 650. 5 Cowen, 383. 9 Johns. R. 43. Kyd on Awards, 62, note d. An award has not the operation of a conveyance, and is as effectual when by *parol* as *under seal.* In several of the preceding cases the submission and award were by parol. An award is conclusive between the parties in relation to the subject matter. It cannot be set aside, except for partiality or corruption, and can in no case be collaterally impeached. 9 Johns. R. 212. 5 Cowen, 425. 5 Wendell, 520, &c.

The offer of the defendant, to show that the line established by the arbitration was not the *true tier line*, was properly overruled. That was the only matter, according to the defendant's construction of the submission, which was submitted to their determination, and which it was the object of the parties to have definitively settled in that manner. The decision of the arbitrators was conclusive.

New trial denied.